UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEREMY RYAN RUSSELL,

              Plaintiff,

v.

UNKNOWN LOOMIS et al.,

              Defendants.

_____/

Case No. 1:22-cv-1034

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Loomis, and Brawly. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment due process, and Section 1985 conspiracy claims against Defendant Losinski. Plaintiff's retaliation and state law claims against Defendant Losinski remain in the case. Further, the Court will deny Plaintiff's pending motions (ECF Nos. 4 and 6).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

**Discussion**

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the MDOC at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues Defendants Sergeant Unknown Loomis, Captain Unknown Losinski, and Hearing Investigator J. Brawly, who were employed by the MDOC at LCF during the pertinent time. Plaintiff states that he is suing each of the Defendants in their individual capacities. Plaintiff also names the MDOC as a Defendant.

Plaintiff alleges that on June 11, 2021, he quit his work assignment in food service following the lunch service. On the next day, June 12, 2021, Plaintiff filed a grievance against the person who was responsible for instituting a policy that prevented prisoners from declining work service details. Plaintiff later learned that this was Mrs. Losinski, the LCF Classification Director and Defendant Losinski's wife. On June 14, 2021, Plaintiff received a retaliatory "out of place" misconduct ticket for failing to report to a work assignment that he "had already quit." (Compl., ECF No. 1, PageID.8.) Plaintiff states that if he had reported to his work detail after quitting, he would been considered out of place.

On June 15, 2021, Defendant Loomis called Plaintiff to the control center and reviewed the misconduct ticket with him. Plaintiff requested a hearing and indicated that he would provide evidence during the hearing. However, on June 18, 2021, Plaintiff received notice that he had been found guilty without receiving a hearing. That same day, June 18, 2021, Plaintiff submitted a kite to Defendant Brawly to request a class II misconduct appeal form. On June 23, 2021, Defendant Loomis called Plaintiff to the control center and attempted to convince him to sign off on the "'out of place' misconduct," indicating that he had pleaded guilty and was accepting the sanctions

4

imposed. (*Id.*) When Plaintiff refused, Defendant Loomis fetched Defendant Losinski, who indicated that Plaintiff should follow him into a back office. Once there, Defendant Losinski became threatening and demanded that Plaintiff sign off on the misconduct. When Plaintiff repeatedly refused, Defendant Losinski asked if he wanted to do things the "hard way." (*Id.*, PageID. 9.) As Plaintiff turned to leave, Defendant Losinski said that he had something for Plaintiff for grieving Defendant Losinski's wife. Plaintiff felt threatened and believed that Defendant Losinski had used his influence to make sure that Plaintiff received the misconduct ticket.

When Plaintiff returned to his unit, Officer Clevenger (not a party) told Plaintiff that Defendant Losinski had called the unit and instructed him to "go old school on . . . [Plaintiff's] ass." (*Id.*, PageID.10.) Officer Clevenger indicated that he would not comply with Defendant Losinski's order and remained true to this statement. That evening, "Plaintiff re-kited [Defendant] Brawly" and informed him of the threats by Defendant Losinski. (*Id.*)

On June 24, 2021, "Plaintiff kited mental health for help with his mental and emotional injuries." (*Id.*) Plaintiff states that mental health staff instructed him to practice breathing, to stop being paranoid, and to practice using his conflict resolution skills, which Plaintiff found to be "unhelpful." (*Id.*) Plaintiff filed a grievance against Defendants Loomis, Losinski, and Brawly on June 25, 2021. That same day, Plaintiff also filed a grievance regarding the lack of due process he received in relation to his class II misconduct.

On June 25, 2021, Plaintiff received what he alleges to be falsified class II and III misconduct tickets. On June 26, 2021, Plaintiff filed a grievance regarding the false class II ticket, asserting that Defendants Losinski and Brawly had collaborated to produce the ticket. Plaintiff alleges that starting on June 26, 2021, he was "shaken down more [frequently] than other inmates" and was subjected to strip searches. (*Id.*, PageID.11.) On one occasion, Plaintiff was strip searched

by Defendant Losinski while other officers ransacked his property. Plaintiff was eventually transferred due to unrelated emergency reasons. Plaintiff lists three inmates as witnesses of the harassment by Defendants: Joseph Craigo, Keith Easting, and Mark White. (*Id.*, PageID.12.)

On July 2, 2021, Defendant Brawly denied Plaintiff's grievance on Defendant Losinski and himself despite knowing that he had violated MDOC policy. On July 7, 2021, Plaintiff appealed his misconduct conviction for being out of place. Plaintiff's conviction was upheld by Assistant Deputy Warden T. Chrisman (not a party).

On July 22, 2021, Plaintiff submitted a kite to Assistant Deputy Warden Chrisman seeking reconsideration of his misconduct conviction. On July 23, 2021, Plaintiff filed a step II grievance appeal accompanied by an affidavit in support of his claims. Plaintiff wishes the Court to take notice of the fact that, while the June 23, 2021 hearing report indicates that Plaintiff had been in the control center for a misconduct hearing, a grievance response by Defendant Losinski states that Plaintiff was called to the control center to receive an appeal form from Defendant Brawly. (*Id.*, PageID.12–13.)

In support of his claims, Plaintiff attaches a copy of the misconduct report and the hearing report to his complaint. (ECF Nos. 1-2, 1-5.) The misconduct report indicates that Plaintiff's ticket was reviewed with him by Defendant Loomis on June 15, 2021, and that he was given two days' loss of privileges beginning on June 15, 2021, as a sanction for being out of place by failing to report to food service on June 11, 2021. (ECF No. 1-2, PageID.31.)

The hearing report states that the hearing was held on June 23, 2021, by Defendant Losinski, who stated:

> During the hearing, Prisoner Russell pled not guilty to the charge of Out of Place but gave no reason as to why this plea was entered. Facility camera system was reviewed regarding this incident. Prisoner Russell was never located in Food

> Service on the date of violation as required. I find Prisoner Russell guilty as charged.

(ECF No. 1-5, PageID.34.) Defendant Brawly signed the hearing report as hearing investigator on June 25, 2021. (*Id.*)

Plaintiff also attaches a copy of his June 23, 2021 letter request for a hearings appeal packet, in which he seeks an appeal form and a copy of the hearing report. (ECF No. 1-4, PageID.33.) In the letter request, Plaintiff states that he never actually received a hearing. Plaintiff also informed Defendant Brawly that Defendant Losinski had threatened him in an effort to force Plaintiff to lie about receiving a hearing. (*Id.*)

Plaintiff attaches copies of grievances he submitted to A.A. Rurka as an exhibit (ECF No. 1-6), in which Plaintiff reasserts that he never received a hearing and that the hearing report had been falsified by Defendant Losinski. Plaintiff states that it appeared as if Defendant Brawly had collaborated with Defendant Losinski because he had signed off on the hearing report. (*Id.*, PageID.35.) Plaintiff also reasserted that Defendant Losinski had threatened that Plaintiff had better sign off on the misconduct "or else," and told Plaintiff, "I've got something for you for grieving my wife." (*Id.*, PageID.36.) Finally, Plaintiff informed A.A. Rurka that when he returned to his unit, the unit officer told him that Defendant Losinski had instructed him to "go old school on [Plaintiff's] ass." (*Id.*)

Plaintiff unsuccessfully appealed his misconduct. (ECF No. 1-7.) Plaintiff filed a request for reconsideration on July 22, 2021, which he attaches to his complaint. (ECF No. 1-8.) In his request, which is addressed to T. Crisman, Plaintiff states:

> On this misconduct it is clear that I requested a hearing. On this misconduct it is also clear that sanctions were imposed upon me the same date that I was reviewed on the misconduct 6-15-21 before a hearing was conducted.

(*Id.*, PageID.39.) Plaintiff states that "no hearing was conducted and that this Hearing Report is a fraudulent document." (*Id.*)

On August 8, 2021, Prisoner Counselor Cope (not a party) told Plaintiff that he was not eligible for the Dog Program because of the misconduct that Defendants had imposed upon him. (ECF No. 1, PageID.13.) On October 18, 2021, Plaintiff submitted a kite to LCF Warden Brian Morrison (not a party) regarding Defendants' misconduct. On October 21, 2021, Plaintiff was called to the control center, and his out of place misconduct conviction was overturned. Plaintiff states that "the guilty finding was not completely removed from the MDOC computer system" and was used against him to deny him employment and participation in privileged activities at LCF. For example, in November of 2021, Plaintiff was refused the opportunity to have "a personal garden" because of the misconduct. (*Id.*)

Plaintiff states that when he was transferred to another facility, he was "forced to leave" without his property, including a typewriter, radio, headphones, clothing, and important paperwork related to this complaint. (*Id.*, PageID.13–14.) Plaintiff claims that he is no longer able to replace the typewriter, which had word processing functionality, or radio with speakers at the price he originally paid for them.

Based on the foregoing allegations, Plaintiff asserts that Defendants conspired together and violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff also claims that Defendants violated his state law rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.   Pending Motions

Plaintiff has requested a court-appointed attorney. (ECF No. 4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).

The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's request for the appointment of counsel (ECF No. 4) will be denied.

Plaintiff has also filed a motion to extend time to submit the initial partial filing fee of $36.03. (ECF No. 6.) However, a review of the electronic docket in this case reveals that Plaintiff paid the initial partial filing fee of $36.03 on January 27, 2023. Therefore, Plaintiff's motion is properly denied as moot.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Defendant MDOC**

Plaintiff has named the MDOC as a Defendant. However, Plaintiff may not maintain a Section 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits

10

in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. And regardless, Plaintiff's claims against the MDOC fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2).

Accordingly, for these reasons, Plaintiff's claims against the MDOC are properly dismissed.

### B.    Eighth Amendment

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this case, Plaintiff asserts that, as a result of this misconduct, he was forced to serve two days of sanctions, lost his ticket-free status, and became ineligible for a garden and the dog program. However, Plaintiff fails to allege any facts showing that he was subjected to the type of conduct which constitutes an extreme deprivation. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

### C.    Fourteenth Amendment Due Process Clause

Plaintiff also alleges that Defendants violated his right to due process under the Fourteenth Amendment. Specifically, Plaintiff claims that he did not receive due process in relation to his out-of-place misconduct ticket, which was a class II misconduct. (Misconduct Report, ECF No. 1-2, PageID.31.)

A minor misconduct conviction does not implicate the due process clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that

one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105 ¶ B (eff. July 1, 2018), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. *See* MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022). The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD; MDOC Policy Directive 03.03.105 ¶ AAAA (eff. July 1, 2018).

Here, Plaintiff received a class II misconduct charge for being out of place, and the sanction imposed was two days' loss of privileges. Plaintiff was not, and could not have been, denied good time or disciplinary credits as a result of his class II misconduct conviction. *See* MDOC Policy Directive 03.03.105 ¶ AAAA (eff. July 1, 2018); *see also* MDOC Policy Directive 03.03.105 ¶ DDDD (eff. Apr. 18, 2022). Therefore, these misconduct convictions are not atypical and significant deprivations and do not implicate due process.

Moreover, the sanction of two days' loss of privileges, which Plaintiff received for his class II misconduct conviction, does not constitute an "atypical and significant" deprivation under *Sandin*, 515 U.S. at 484. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges"

14

sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation). Therefore, because Plaintiff's misconduct did not affect the duration of his sentence or impose an atypical or significant hardship on Plaintiff, his due process claim regarding the misconduct is properly dismissed.

Moreover, to the extent that Plaintiff claims that when he was transferred to another prison he was forced to leave without his property, including a typewriter, radio, headphones, clothing, and important paperwork related to this complaint, he fails to allege that any of the named Defendants had any involvement with the handling of his property or in his transfer. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Therefore, Plaintiff fails to state a claim for the loss of his property.[2]

---

[2] Moreover, such a claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### D.  Conspiracy in Violation of 42 U.S.C. § 1985(2)

Plaintiff claims that Defendants conspired to retaliate against him and deter him from exercising his equal protection[3] rights by causing a misconduct ticket to be written, finding him guilty without a hearing, attempting to force Plaintiff to sign off on the misconduct by threatening him, harassing Plaintiff with shakedowns and strip searches, and denying Plaintiff's grievances. (ECF No. 1, PageID.17–19.)

Plaintiff specifically asserts a violation of 42 U.S.C. § 1985(2). The Court notes that subsection (2) of § 1985 does not apply. The first clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Assuming that Plaintiff is also seeking to assert a cause of action for conspiracy under 42 U.S.C. § 1985(3), he must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons

---

[3] It appears that Plaintiff's reference to equal protection relates to his attempt to bring a claim under 42 U.S.C. § 1985(2). If Plaintiff had intended to bring a separate equal protection claim under the Fourteenth Amendment, he would fail to state a claim because Plaintiff fails to allege any facts to support such a claim. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

of the equal protection of the laws and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

A conspiracy claim fails when a plaintiff alleges facts showing that the defendants acted together but does not allege facts showing that the parties agreed to an objective to deprive the plaintiff of his civil rights. *See Siefert v. Hamilton Cnty. Bd. of Comm'rs*, 951 F.3d 753, 768 (6th Cir. 2020). In this action, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions against him within a short period of time. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that, although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Here, the Court has reviewed the facts alleged by Plaintiff in his complaint and concludes that he fails to allege facts showing that the actions of Defendants Loomis, Losinski, and Brawly

were the result of an agreement to deprive Plaintiff of his civil rights. Therefore, Plaintiff's conspiracy claims are properly dismissed.

### E.        First Amendment Retaliation

Plaintiff claims that Defendants Loomis, Losinski, and Brawly retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413,

417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004). Moreover,

> *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" [*Muhammad*, 379 F.3d] at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)[)] (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

### 1.      Defendant Losinski

Plaintiff alleges that he filed a grievance on Defendant Losinski's wife on June 12, 2021, and that on June 14, 2021, he received an out of place misconduct for failing to report to his job assignment. When Plaintiff refused to sign off on the misconduct ticket on June 23, 2021, Defendant Loomis fetched Defendant Losinski, who indicated that Plaintiff should follow him into a back office. Once there, Defendant Losinski became threatening and demanded that Plaintiff sign off on the misconduct. When Plaintiff repeatedly refused, Defendant Losinski asked if he wanted to do things the "hard way." (ECF No. 1, PageID.9.) As Plaintiff turned to leave, Defendant Losinski said that he had something for Plaintiff for grieving Defendant Losinski's wife. Plaintiff felt threatened and believed that Defendant Losinski had used his influence to make sure that Plaintiff received the misconduct ticket.

Plaintiff states that later that day, Officer Clevenger told Plaintiff that Defendant Losinski had called the unit and instructed him to "go old school on [Plaintiff's] ass." (*Id.*, PageID.10.) Plaintiff filed a grievance against Defendants Loomis, Losinski, and Brawly on June 25, 2021. On

June 25, 2021, Plaintiff received falsified class II and III misconduct tickets. On June 26, 2021, Plaintiff filed a grievance regarding the false class II ticket, asserting that Defendants Losinski and Brawly had collaborated to produce the ticket. Plaintiff began to be shaken down more frequently than other inmates and called to the control center for strip searches. On one occasion, Plaintiff was strip searched by Defendant Losinski while other officers ransacked his property.

The Court concludes that Plaintiff has alleged sufficient facts to show that he engaged in protected conduct by filing a grievance on Defendant Losinski's wife and by refusing to sign off on the subsequent misconduct ticket. Plaintiff also alleges that Defendant Losinski took an adverse action against him when he falsified a hearing report on Plaintiff's misconduct and subjected Plaintiff to increased shakedowns and strip searches. Finally, Plaintiff claims that Defendant Losinski made specific comments indicating that he was motivated by a desire to retaliate against Plaintiff for his use of the grievance procedure and for refusing to plead guilty to the misconduct. Therefore, the Court will not dismiss Plaintiff's retaliation claim against Defendant Losinski at this time.

### 2.    Defendant Loomis

Plaintiff also claims that Defendant Loomis retaliated against him. Plaintiff states that Defendant Loomis called Plaintiff to the control center and reviewed the misconduct ticket with him on June 15, 2021. At that time, Plaintiff requested a hearing and indicated that he would provide evidence during the hearing. Plaintiff received notice that he had been found guilty on June 18, 2021, and on June 23, 2021, Defendant Loomis called Plaintiff to the control center and attempted to convince him to sign off on the misconduct and to say that he had pleaded guilty and was accepting the sanctions imposed. When Plaintiff refused, Defendant Loomis fetched Defendant Losinski, who then took Plaintiff to a back office and threatened him.

The only adverse conduct Plaintiff specifies on the part of Defendant Loomis is that he improperly imposed the loss of privileges sanction prior to Plaintiff receiving a hearing. However, Plaintiff fails to allege any facts in support of a finding that Defendant Loomis was motivated by a desire to retaliate against him for engaging in protected conduct. In fact, Plaintiff does not allege facts showing Defendant Loomis was aware of the grievance that Plaintiff had written on Defendant Losinski's wife, or that he was privy to Defendant Losinski's alleged conduct in falsifying a hearing report. Therefore, the Court concludes that Defendant's retaliation claim against Defendant Loomis is properly dismissed.

### 3. Defendant Brawly

Plaintiff alleges that Defendant Brawly signed the falsified misconduct hearing report as hearing investigator. Plaintiff states that he submitted a kite to Defendant Brawly to request a misconduct appeal form on June 18, 2021, and June 23, 2021. Plaintiff also alleges that he filed grievances on Defendant Brawly, as well as on Defendants Losinski and Loomis, on June 25 and 26, 2021. Finally, Plaintiff alleges that on July 2, 2021, Defendant Brawly denied Plaintiff's June 26, 2021 grievance on Defendant Losinski and himself. Nowhere in Plaintiff's complaint does he allege any facts showing that Defendant Brawly was motivated by a desire to retaliate against Plaintiff. Nor is it clear from Plaintiff's complaint that Defendant Brawly knew that Defendant Losinski had falsified the misconduct hearing report. Therefore, Plaintiff's retaliation claim against Defendant Brawly is properly dismissed.

### F. State law claims

Plaintiff asserts numerous state law claims against Defendants. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*

21

*v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under Section 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims against Defendants Loomis and Brawly, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with regard to Defendants Loomis and Brawly. Accordingly, Plaintiff's state law claims against Defendants Loomis and Brawly will be dismissed without prejudice.

Because Plaintiff continues to have a pending federal claim against Defendant Losinksi, the Court will exercise supplemental jurisdiction over his state law claims against Defendant Losinksi.

### Conclusion

The Court will deny Plaintiff's pending motions (ECF Nos. 4 and 6). Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Loomis, and Brawly will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment due process, and Section 1985 conspiracy claims against Defendant Losinski. Plaintiff's retaliation and state law claims against Defendant Losinski remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 10, 2023                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     United States Magistrate Judge